PEOPLE v. SMITH.

1. RAPE—AGE OF CONSENT—FAILURE TO MAKE OUTCRY.
  The crime of rape being established, under 3 Comp. Laws 1897, § 11489, by proof of intercourse with a girl under 16 years of age, it is immaterial that the girl made no outcry or resistance.

2. CRIMINAL LAW—TRIAL—LIMITING ARGUMENT.
  Under Cir. Ct. Rule No. 24, subd. *b,* providing that counsel on either side shall be allowed at least a half hour in which to sum up the case to the jury, and that no more than two hours shall be allowed unless the court otherwise orders, the court has discretion to limit counsel in a criminal case to 35 minutes, and to stop them at the expiration of that time.

3. SAME — CHARACTER OF RESPONDENT—REPUTATION FOR TRUTH AND VERACITY.

A respondent is not entitled to present evidence sustaining his reputation for truth and veracity until the same has been attacked by the prosecution.

4. RAPE—INSTRUCTIONS—DENIAL OF GUILT.

The fact that the trial judge, in a prosecution for rape, failed to call the attention of the jury to the testimony of respondent, denying the charges of the complaining witness and of other witnesses, who testified that he had admitted the crime, while instructing them that the testimony of the latter witnesses, if believed, would tend strongly to establish respondent's guilt, does not warrant the reversal of a conviction, where no request for such instructions was preferred by his counsel. LONG and MOORE, JJ., dissenting.

Error to Montmorency; Kelley, J. Submitted October 26, 1899. Decided December 12, 1899.

Silas Smith was convicted of statutory rape, and sentenced to imprisonment for 10 years in the state prison at Marquette. Affirmed.

Respondent was convicted of the crime of rape, under section 11489, 3 Comp. Laws 1897. Absence of consent to sexual intercourse was not necessary; the girl, Carrie Frank, upon whom it was alleged the crime was committed, being under 16 years of age. She was 14 years and 11 months old at the time. Three errors are assigned:

1. The court erred in instructing the jury, "The law does not require that she should make any outcry or resistance, in order to constitute this crime."

2. The court stopped the counsel for the respondent in his argument at the end of 35 minutes.

3. The court did not charge the jury upon the respondent's theory, and consequently the respondent did not have a fair trial.

*L. G. Dafoe*, for appellant.

*Horace M. Oren*, Attorney General, and *Lewis W. Ostrander*, Prosecuting Attorney, for the people.

GRANT, C. J. (*after stating the facts*). 1. The first objection is untenable. The crime is complete, under the statute, whether the intercourse is had with force or by consent. In this case the proof is conclusive that the girl consented, unless it should have been found that she did not possess sufficient mind or intelligence to consent.

2. Cir. Ct. Rule No. 24, subd. *b*, provides that counsel upon either side of a case shall be allowed at least a half hour, if it is desired, and that no more than two hours shall be allowed, unless the court otherwise orders. Under this rule the time for argument rested in the discretion of the circuit judge, and we find nothing to indicate that this discretion was abused.

3. In deciding this question, a brief statement of the testimony may be necessary. Carrie Frank was the first witness. Her direct and cross-examination are given in narrative form. After she had been cross-examined at considerable length, the following colloquy took place:

"*The Court:* Mr. Francis, is this man Marshall here, the justice of the peace?

"*Mr. Francis:* Yes, your honor.

"*The Court:* You may have this witness stand aside. Let's see what he knows about it. I don't propose to be trifled with by this witness any more. I have extended indulgence here without any reason. This girl is not *non compos*, in my judgment. You may stand aside. Take a seat down there. Call your other witnesses, and especially that justice. I want to know how he came over there to see about this trouble."

Mr. Marshall was then sworn, and testified that he was a justice of the peace, that he was requested by the girl's sister to take her to her father's home, that he had previously heard the report of respondent's intercourse with the girl, and that he took the complaint. On cross-examination he testified that he had stated that the girl at first denied the intercourse, because "her folks told me she denied it in the first place, when they first talked to her about it." One Wellington, with whom respondent was boarding, testified that respondent told him he was going

over to his brother's to board, where this girl was, and for the express purpose of having intercourse with her, and that witness replied, "Mr. Smith, a man of your age ought to be thinking of something else besides trying to commit rape on a school-girl." Two other witnesses testified that respondent voluntarily stated that he had accomplished his object, and had had sexual intercourse with the girl. Opposed to this testimony was the denial of the respondent of his intercourse with the girl, and of the conversations with the other three witnesses.

The only objection that can be urged against the charge of the court is that it failed to call attention to the testimony of the respondent. It is not urged that the charge was erroneous. On the contrary, it was entirely proper that the court should call the attention of the jury to the position of the young girl, and to instruct them that, in weighing her testimony, they should take into consideration her condition, her circumstances of life, and her embarrassing position upon the witness stand, and all circumstances, in determining what credit they should give to her evidence. He also called the attention of the jury to the impeaching testimony introduced by the respondent, and instructed them to weigh it in the light of all the circumstances. It was his duty to instruct the jury in regard to the admissions, and to say to them that—

"If they were made voluntarily and intelligently, they are considered competent evidence, and oftentimes evidence which tends strongly to the establishment of the crime charged, if they are admitted and confessed deliberately, intelligently, and under such circumstances that the party was not laboring under any undue influence."

The circuit judge closed that part of his instructions by saying that it was the duty of the jury to weigh all the evidence, and determine from that whether the respondent was guilty. He then fully instructed them upon the presumption of innocence, and told them that they should not allow any prejudice or influence of sympathy or favor to weigh in determining the important question before them. He then said, in closing his instructions:

."You must take this evidence, and arrive at such a conclusion as meets the approval of your honest consciences, and determine this question, of the greatest importance to the respondent, and of the utmost importance to the people; and, when you have weighed this evidence, if your minds are in that condition that you can say that you believe him guilty to a moral certainty, beyond a reasonable doubt, it is your duty to convict, otherwise you must acquit."

No fault can be found with this charge, unless it be the failure to call the attention of the jury to the denial of the respondent. He had able counsel to defend him, and no request or suggestion was made to the court by him upon this point. The respondent stood contradicted by four witnesses. Either he or they were guilty of perjury. There is nothing upon this record, except the statement of the circuit judge, to show that the girl was not of sound mind, and did not fully comprehend the nature of her oath. The statement made by the court would operate in the respondent's favor, rather than against him.

The prosecution had not attacked the reputation of the respondent for truth and veracity, and the evidence introduced in his behalf upon this point was incompetent, and, upon objection, might have been rejected. It was not error on the part of the court not to call the attention of the jury to this testimony. While the court might with propriety have said something to the jury about the defense, yet I do not think it was error for which the case should be reversed. Respondent had an able attorney to defend him; and I do not think it can be said that, under the charge, the jury were misled, or did not understand and fully consider the defense.

I think the conviction should be affirmed.

Montgomery and Hooker, JJ., concurred with Grant, C. J.

Long, J. (*dissenting*). Respondent was convicted under an information charging that on the 23d day of October, 1897, he——

" With force and arms, in and upon one Carrie Frank, a female child under the age of sixteen years, to wit, of the age of fourteen years, eleven months, and twenty days, feloniously did make an assault, and her, the said Carrie Frank, then and there feloniously did unlawfully and carnally know and abuse."

He was sentenced to 10 years' imprisonment in the state house of correction and branch of the state prison at Marquette.

Carrie Frank was called as a witness, and testified that at that time she lived with Winslow Smith, a brother of respondent; that on the night in question the respondent came to her room and had intercourse with her, while Winslow Smith and his wife were in a bed in the same room, and only a blanket between their bed and her own, and that that was the only time respondent came to her bed; that she said nothing about it to any one until a few days after, when a justice of the peace came to see her about it; that she at first denied it to him and to her mother and sister, but that finally she made the complaint upon which the warrant for the arrest of the respondent was issued. The justice was called, and testified that at first the girl denied the story, but afterwards admitted it, and that he thereupon issued the warrant. The prosecution also called one James Wellington as a witness, who testified that the respondent told him he was going to try to make connection with Carrie Frank, but witness could not state whether he meant married connection or not. Another witness for the prosecution testified that respondent told him that he had had connection with Carrie Frank on Saturday night, and again on Monday morning, in her room. Respondent was called as a witness in his own behalf, and denied that he had ever had intercourse with Carrie Frank. He also denied that he had ever stated that he was going to have connection with the girl, or that he had stated that he had had connection with her. The defense also called several witnesses who testified that the respondent's reputation for truth and veracity was good.

The county treasurer of the county testified that the general reputation of the witness James Wellington was bad. Mrs. Smith, the wife of respondent's brother, testified to the location and condition of the rooms upstairs where the girl slept, and stated that there was only a curtain between her bed and where the girl slept, and that respondent never went to the girl's room, to her knowledge.

It being made to appear to the court that respondent was unable to employ counsel, the court appointed counsel to defend him. At the close of the testimony the court limited the arguments of counsel to 35 minutes on a side, and, after counsel for respondent had spoken for that length of time, the court stopped him and would allow no further argument. Counsel took exception to this ruling. The first assignment of error is based upon this ruling. We think this was within the discretion of the trial court, under subdivision *b*, Cir. Ct. Rule No. 24.

We are satisfied, however, that the court was in error in the charge as given, and that under it the respondent did not have that fair and impartial trial which the Constitution provides,—not, however, in what the court said, but in what he omitted to say. After stating to the jury what would constitute the offense which respondent was charged with, he proceeded to detail the circumstances of the case, and what the people claimed, and then referred to the testimony of the girl, the testimony of the two witnesses as to admissions made by the respondent to them, and then said:

"Did he make such admissions? * * * Under what circumstances were they made? If they were made voluntarily and intelligently, they are considered competent evidence, and oftentimes evidence which tends strongly to the establishment of the crime charged. * * * These admissions you have a right to weigh."

After going over the evidence introduced on the part of the people, the learned judge said further: "You must take this evidence, and arrive at such a conclusion as

meets the approval of your honest consciences." Nowhere in the charge did the court call the attention of the jury to the claims made by the respondent, or to any testimony introduced in his behalf. He was called in his own behalf, and denied emphatically the story told by the girl, and also denied that he had made the claimed confessions. While calling the attention of the jury to the story told by the girl, the court did not refer to the situation of the bed the girl occupied on that occasion,—that it was within a few feet of the bed occupied by Mrs. Smith, with only a blanket between the two beds; nor to the testimony of Mrs. Smith, who testified that the respondent did not come in there, to her knowledge. The charge is one which is easy to be made, and hard to be defended against. The circumstances under which the complaint was made were somewhat peculiar. The justice who took the complaint drove many miles, and into another county, for the purpose of interviewing the girl and having her make it. At first she denied the whole matter to him and to her mother, but finally, before the justice left, he had taken the complaint, and at once on his return issued the warrant. These were circumstances which might have a strong tendency to strengthen the testimony of the respondent and to weaken the testimony of the girl; and if the court was to dwell at length upon the people's evidence, which he did, then, in fairness to the respondent, such circumstances as were favorable to him and his theory of defense should have been given, and the attention of the jury called to the testimony given on behalf of respondent. It has many times been held by this court that even in civil cases a party to the case has the right to have his theory of the case submitted to the jury. *Wildey* v. *Crane*, 69 Mich. 17. We have not overlooked the fact that no requests to charge were tendered by counsel for the respondent; but counsel had the right to complain of the charge as given, notwithstanding that fact, for he presumably could not have known beforehand just how

the court would submit the case to the jury, or that the court would entirely ignore the respondent's claims.

The conviction should be reversed, and a new trial awarded.

MOORE, J., concurred with LONG, J.